UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

   - against -

ABRAHAM CASTRO,

                       Defendant.

------------------------------------X

03 Cr. 185-01 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

        On September 28, 2004, Abraham Castro, a/k/a "Negrito," a/k/a "Nelson," ("Castro" or "Defendant") pleaded guilty to one count of using or carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), and one count of using or carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). For the reasons set forth below, Castro will be sentenced to 360 months' imprisonment to be followed by 5 years' supervised release. Castro will also be required to pay a special assessment of $200.

**Prior Proceedings**

On February 14, 2003, Information S1 03 CR 185-01 (RWS) was filed in the Southern District of New York. Count 1 charges that in September 1998, in the Southern District of New York, Castro used, carried, and possessed a 9mm pistol, in relation to a conspiracy to murder and the murder of Jose Jimenez, a/k/a "Paca," which conspiracy and murder were in aid of the Negrito Organization, as charged in Counts 1 and 2 of Indictment 03-CR-185 (RWS), in violation of 18 U.S.C. § 924(c). Count 2 charges that in April 1999, in the Southern District of New York, Castro used, carried, and possessed a 9mm pistol in relation to a conspiracy to distribute cocaine as charged in Count 1 of Indictment 01-CR-39 (MBM), in violation of 18 U.S.C. § 924(c)(1).

On September 28, 2004, Castro appeared before the Honorable Robert W. Sweet in the Southern District of New York and pleaded guilty to Counts 1 and 2 in accordance with a plea agreement.

Castro's sentencing is currently scheduled for June 7, 2011.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Guidelines.  Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed —

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

        (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

    (5)    any pertinent policy statement . . . [issued by the Sentencing Commission];

    (6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Castro's personal and family history.

**The Offense Conduct**

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set

4

forth in that report.

Castro operated a drug distribution business in the Washington Heights section of New York City that distributed cocaine and crack in both wholesale and retail quantities (the "Negrito Organization"). The Negrito Organization operated out of, among other places, an apartment at 3675 Broadway and distributed upwards of 100 kilograms of cocaine per week, employing eight to ten "workers," who performed jobs such as "look-out," "runner," "scaler," and bookkeeper. Castro possessed firearms in furtherance of his drug trafficking activities.

One employee of the Negrito Organization was Jose Jimenez, who most frequently worked as a look out outside of the 3675 Broadway building. In late 1996, the Organization's stash house at 3675 Broadway was robbed. Large amounts of drugs and money were stolen during this robbery. There was no forced entry and an elaborate mechanical trap which was hiding the drugs and money was opened properly. This led CASTRO to suspect that the robbery was an "inside job." Jimenez was, in fact, involved in the robbery. Specifically, prior to the robbery, Jimenez told a friend who was a member of a robbery crew that

there were significant quantities of drugs and money in the apartment at 3675 Broadway, and that no one lived there. As a result of this tip, Jimenez's friend and other members of his robbery crew committed the robbery, splitting the proceeds among the robbers and Jimenez.

Castro eventually came to believe that Jimenez was involved, in part because he became suspicious that Jimenez appeared to have more money after the robbery than he did before. Among other things, Castro learned that Jimenez was building a house in the Dominican Republic near Castro's mother's house.

Castro ultimately decided to have Jimenez killed and informed the other equity partners in the Negrito Organization at that time that Castro was going to have Jimenez killed and that he was going to use $12,000 of the Organization's funds to hire a hit man. Both of the other partners agreed that Castro could use the organization's funds to hire a hit man.

To find a hit man, Castro approached one of his customers, Edwin Toress, a/k/a "Manny." Torres in turn hired

Noland Johnson to carry out the shooting. In addition to the $12,000, Castro provided Torres and Johnson with a gun.

Jimenez was shot on September 26, 1998. On the day of the shooting, Torres went to a restaurant called the Jubilee in upper Manhattan and met Jimenez. Torres called Jimenez outside of the restaurant, and when Jimenez came outside, the shooter (an individual working with Johnson) shot Jimenez between six and nine times at point blank range in the abdomen, back, face, and head. Torres later called Castro to tell Castro that the plan had been executed.

In regard to Count 2, Castro used, carried and possessed a 9mm pistol in relation to his involvement in a cocaine distribution conspiracy for which he has been convicted (Dkt.# 01-CR-39 (MBM)) and is currently serving a sentence of 121 months' imprisonment.

**The Relevant Statutory Provisions**

For Count 1, pursuant to 18 U.S.C. § 924(c)(1)(A), a term of five years to run consecutively to any other term of imprisonment is mandatory. For Count 2, a term of 25 years to

run consecutively to any other term of imprisonment is mandatory, pursuant to 18 U.S.C. § 924(c)(1)(A).

For Counts 1 and 2, if a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than five years, pursuant to 18 U.S.C. § 3583(b)(1). Such terms of supervised release are to run concurrently, pursuant to 18 U.S.C. § 3624(e).

For Counts 1 and 2, Defendant is not eligible for probation because the instant offenses are ones for which probation has been expressly precluded by statute, pursuant to 18 U.S.C. § 3561(a)(2) and 18 U.S.C. § 924(c)(1).

For Counts 1 and 2, the maximum fine that may be imposed is $250,000 per count, pursuant to 18 U.S.C. § 3571. A special assessment of $100 per count is mandatory, pursuant to 18 U.S.C. § 3013.

**The Guidelines**

The November 1, 2007 edition of the United States Sentencing Commission Guidelines Manual has been used in this

case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

Regarding Counts 1 and 2, the guideline for violations of 18 U.S.C. § 924(c) is found in § 2K2.4(b) which provides that the guideline sentence is the minimum term of imprisonment required by statute. As indicated above, pursuant to 18 U.S.C. § 924(c), for Count 1, the minimum term of imprisonment is 5 years, and for Count 2 (a second or subsequent conviction), the minimum term of imprisonment is 25 years. Both terms of imprisonment are to run consecutive to any other term of imprisonment. Therefore, the guideline imprisonment range is 360 months, which is to run consecutively to Defendant's undischarged term of imprisonment.

Additionally, pursuant to § 2K2.4(b), Chapters Three and Four of the Guidelines do not apply to the counts of conviction.

Because Chapter Four of the Guidelines does not apply to violations of 18 U.S.C. § 924(c), there is no criminal

9

history computation.

For Counts 1 and 2, the guideline range for a term of supervised release is three to five years, pursuant to § 5D1.2(a)(1). If a sentence of imprisonment of one year or less is imposed, a term of supervised release is not required but is optional, pursuant to § 5D1.1(b).

Defendant is not eligible for probation because the instant offenses are ones for which probation has been expressly precluded by statute, pursuant to § 5B1.1(b)(2).

There is no guideline fine provision for Counts 1 and 2. Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,036.92 to be used for imprisonment, a monthly cost of $294.60 for supervision, and a monthly cost of $1,799.04 for community confinement.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

**The Sentence**

For the instant offenses, Castro will be sentenced to 360 months' imprisonment, which term is to run consecutively to Defendant's undischarged term of imprisonment, and 5 years' supervised release on each count, those terms to run concurrently.

11

Castro is directed to report to the nearest United States Probation Office within seventy-two hours of release to commence his term of supervised release. It is recommended that Castro be supervised by the district of his residence.

As mandatory conditions of his supervised release, Castro shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; (4) cooperate in the collection of DNA as directed by the probation officer; and (5) shall submit to one drug testing within 15 days of placement on probation or supervised release and at least two unscheduled drug tests thereafter, as directed by the probation officer.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1) Defendant shall obey the immigration laws and comply with the directives of immigration authorities.

(2) Defendant shall submit his person, residence,

12

place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived.

A special assessment of $200, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for June 7, 2011.

It is so ordered.

New York, NY
June 3, 2011

_____
ROBERT W. SWEET
U.S.D.J.